UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMOY MADDIX, on behalf of herself, individually, and on behalf of all others similarly-situated, | **COMPLAINT** |
| Plaintiff, | **Civ. Action No.: 17-cv-4658** |
| -against- | |
| POPEYE'S LOUISIANA KITCHEN, INC. and BAYCHESTER CHICKEN, INC. d/b/a POPEYE'S LOUISIANA KITCHEN, | **Jury Trial Demanded** |
| Defendants. | |

TAMOY MADDIX ("Plaintiff"), on behalf of herself, individually, and on behalf of all others similarly-situated, (collectively as "FLSA Plaintiffs" and/or "Rule 23 Plaintiffs"), by and through her attorneys, NESENOFF & MILTENBERG, LLP., as and for her Complaint against POPEYE'S LOUISIANA KITCHEN, INC ("Defendant PLK"), and BAYCHESTER CHICKEN, INC. d/b/a POPEYE'S LOUISIANA KITCHEN ("Defendant Popeye's") (collectively with Defendant PLK as the "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1.    This is a civil action for damages and equitable relief based upon Defendants' violations of Plaintiff's rights as guaranteed by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160, N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information, N.Y. Lab. Law § 195(3); (iv) the NYLL's requirement that employers furnish employees with a wage notice at hire containing

specific categories of accurate information, N.Y. Lab. Law § 195(1); (v) the minimum wage provisions of the FLSA; (vi) the minimum wage provisions of the NYLL; (vii) the New York State Human Rights Law ("SHRL"), N.Y. Exec. Law § 290 et. seq.; (viii) the New York City Human Rights Law ("CHRL"); (ix) 42 U.S.C. § 1981; and (x) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff worked for Defendants as a cashier from approximately March 31, 2015 until approximately November 3, 2016. As described in further detail below, throughout her employment, Defendants willfully failed to pay Plaintiff the overtime wages lawfully due to her under the FLSA and the NYLL, and failed to pay Plaintiff the minimum wage due to her under the FLSA and the NYLL.

3.      Specifically, the Defendants required Plaintiff to work well beyond forty hours in a workweek, but failed to compensate her at the statutorily-required overtime rate of one and one-half times her straight-time rate of pay for all hours that she worked per week in excess of forty. Moreover, over the course of her tenure, Plaintiff was paid an hourly wage between $7.31 and $8.31 per hour, an amount drastically below the federal and state minimum wage requirement. Additionally, the Defendants did not provide Plaintiff with accurate wage statements on each payday or a wage notice at hire as the NYLL requires.

4.      Defendants paid and treated all of their cashiers and chefs in the same manner.

5.      Plaintiff brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of herself, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA.

6.      Plaintiff also bring this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of herself, individually, and on behalf of all other persons similarly-situated during the applicable NYLL limitations period who suffered damages as a result of the Defendants' violations of the NYLL and the supporting New York State Department of Labor regulations.

7.      Further, on an individual basis only, Plaintiff brings discrimination claims against Defendants in violation of 42 U.S.C. § 1981, the SHRL and the CHRL. As described in detail below, throughout Plaintiff's tenure she was repeatedly and blatantly treated as inferior to her similarly situated non-Jamaican and Muslim counterparts by her almost exclusively Muslim supervisors.

## JURISDICTION AND VENUE

8.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

9.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(1), as one or more of the Defendants reside within this judicial district.

## PARTIES

10.      At all relevant times herein, Plaintiff worked for Defendants in Bronx County, New York and was an "employee" entitled to protection as defined by all applicable Federal, State, and local laws including but not limited to the FLSA, NYLL, NYCCRR, the SHRL, and the CHRL.

11.    Upon information and belief, at all times relevant herein, Defendant PLK is and has been an entity duly organized and existing under the laws of the State of Minnesota with a principal place of business located at 400 Perimeter Center Terrance, Suite 1000, Atlanta, Georgia 30346.  Upon information and belief, Defendant PLK at all times relevant was and is registered to do business in the State of New York, and in fact did and continues to engage in, inter alia, the restaurant business with numerous franchises nationwide, including within the State of New York.

12.    Upon information and belief, Defendant Popeye's is and has been an entity duly organized and existing under the laws of the State of New York with a principal place of business located at 2585 Nottingham Way, Hamilton, New Jersey 08619.

13.    At all relevant times herein, both Defendants were and are "employers" within the meaning of all applicable Federal, State, and local laws including but not limited to the FLSA, NYLL, NYCCRR, the SHRL, and the CHRL.

14.    Additionally, in each year from 2011 to the present, Defendants', both individually and jointly, qualifying annual business exceeded and continues to exceed $500,000.00.

15.    Further, Defendants, both individually and jointly, is/are engaged in interstate commerce within the meaning of the FLSA. For example, numerous items that were sold and/or used by Defendants on a daily basis in the operation of Defendants' restaurant(s) in New York State were produced outside of the State of New York.

## COLLECTIVE ACTION ALLEGATIONS

15.    Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime compensation, unpaid minimum wage, and liquidated damages, pursuant to the applicable

provisions of the FLSA, individually on her own behalf, as well as on behalf of those in the following collective:

> Current and former employees of Defendants who, during the applicable FLSA limitations period, performed any work for Defendants as cashiers and/or chefs, who give consent to file a claim to recover damages for unpaid minimum wages and overtime compensation that is legally due to them for the time worked in excess of forty hours per week ("FLSA Plaintiffs").

16.     Defendants treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Background Facts" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty; and (6) were paid a bi-weekly flat salary that represented only the first forty hours of each workweek and which computed to less than the mandated federal minimum wage.

17.     At all relevant times, Defendants are and have been aware of the requirement to pay Plaintiff and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

18.     At all relevant times, Defendants are and have been aware of the requirement to pay Plaintiff and all FLSA Plaintiffs at an amount equal to the federal minimum wage for the first forty hours worked in each workweek, yet they purposefully and willfully chose and choose not to do so.

19.    Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees minimum wage and overtime compensation in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

20.    In addition, Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on her own behalf, as well as on behalf of those who are similarly situated who, during the applicable limitations period, Defendants subjected to violations of the NYLL and the NYCCRR.

21.    Under FRCP 23(b)(3), Plaintiff must plead that:

      a.    The class is so numerous that joinder is impracticable;

      b.    There are questions of law or fact common to the class that predominate over any individual questions of law or fact;

      c.    Claims or defenses of the representative are typical of the class;

      d.    The representative will fairly and adequately protect the class; and

      e.    A class action is superior to other methods of adjudication.

22.    Plaintiff seeks certification of the following FRCP 23 class:

Current and former employees who performed any work for Defendants as cashiers and/or chefs during the statutory period, within the State of New York, who: (1) did not receive the legally require minimum wage rate for the first forty hours worked in each workweek; (2) did not receive compensation from Defendants at the legally required overtime rate of pay for each hour worked over forty hours in each workweek; (3) were not provided with accurate wage statements on each payday pursuant to NYLL 195(3); and/or (4) were not provided with a wage notice at hire containing specific categories of accurate information as required by NYLL §195(1) ("Rule 23 Plaintiffs").

## I.    Numerosity

23.    During the previous six years, Defendants have, in total, employed at least forty employees that are putative members of this class.

## II.    Common Questions of Law and/or Fact

24.    There are questions of law and fact common to each and every Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that Defendants required and require each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff; (3) whether Defendants failed and fail to pay Rule 23 Plaintiffs the proper minimum wage pursuant to both federal and state law; (4) whether Rule 23 Plaintiffs worked and work in excess of forty hours per week; (5) whether Defendants failed and fail to pay Rule 23 Plaintiffs proper overtime compensation for all hours worked in excess of forty hours in a week; (6) whether Defendants furnished and furnish Rule 23 Plaintiffs with accurate wage statements on each payday containing the information that NYLL § 195(3) requires; (7) whether Defendants furnished and furnish Rule 23 Plaintiffs with an accurate wage notice at hire containing specific categories of accurate information as required by NYLL § 195(1); (8) whether Defendants kept and maintained accurate records of hours that the Rule 23 Plaintiffs worked; (9) whether Defendants kept and maintained records with respect to the compensation that they paid to the Rule 23 Plaintiffs for each hour worked; (10) whether Defendants have any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (11) whether the Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and supporting regulations; and (12) if so, what constitutes the proper measure of damages.

III.    Typicality of Claims and/or
        Defenses

25.    As described in the "Background Facts" section below, Defendants employed and/or employ Plaintiff and Rule 23 Plaintiffs within the meaning of the NYLL. Plaintiff's claims are typical of the claims of the Rule 23 Plaintiffs whom she seeks to represent, as the Rule 23 Plaintiffs work and/or have worked for Defendants as cashiers and/or chefs during the statutory period within the State of New York, and Defendants failed to: (i) pay them the proper minimum wage for the first forty hours worked in each workweek, (ii) pay them overtime pay for all hours worked in a week over forty, and/or (iii) provide them with proper wage statements on each payday or a wage notice at hire.

26.    Plaintiff and the Rule 23 Plaintiffs enjoy the same statutory rights under the NYLL to receive the minimum wage and overtime wages for all hours worked over up to and beyond forty hours and to be furnished with accurate wage statements on each payday and a wage notice at hire.

27.    Plaintiff and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL and supporting regulations, namely lack of compensation or under-compensation due to Defendants' common policies, practices, and patterns of conduct.  Thus, Plaintiff's claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and/or Defendants' defenses to those claims.

IV.    Adequacy

28.    Plaintiff, as described below, worked the same or similar hours as the Rule 23 Plaintiffs throughout her employment with Defendants.

29.    Defendants did not pay Plaintiff overtime for all hours worked over forty hours in a week and did not furnish Plaintiff with accurate wage statements on each payday or an accurate

wage notice at hire, which is substantially similar to how Defendants paid and treated the Rule 23 Plaintiffs.

30.     Defendants did not pay Plaintiff the proper minimum wage under the FLSA and NYLL, which is substantially similar to how Defendants paid and treated the Rule 23 Plaintiffs

31.     Plaintiff fully anticipates providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer.

32.     Thus, Plaintiff would properly and adequately represent the current and former employees whom Defendants have subjected to the treatment alleged herein.

V.     <u>Superiority</u>

33.     Plaintiff has no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.   Indeed, at all relevant times herein, Defendants treated Plaintiff identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

34.     Any lawsuit brought by an employee of Defendants would be identical to a suit brought by any other employee for the same violations. Thus, separate litigation would risk inconsistent results.

35.     Accordingly, this means of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

36.     Additionally, Plaintiff's counsel has substantial experience in this field of law.

**BACKGROUND FACTS**

**Defendants Are Joint Employers**

37.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

38.     Upon information and belief, Defendant Popeye's is a franchisee of Defendant PLK and Defendant PLK is a franchisor of Defendant Popeye's.

39.     Upon information and belief, Defendant Popeye's owns and operates a place of business in the restaurant industry under the name "Popeye's Louisiana Kitchen," located at 1201 East 233rd Street, Bronx, New York 10466 (the "Location").

40.     Upon information and belief, the Location is operated and maintained under a franchise agreement between Defendant PLK and Defendant Popeye's.

41.     Upon information and belief, Defendants operate as part of a single integrated enterprise that employed or jointly employed Plaintiff at all relevant times herein.

42.     Upon information and belief, Defendants are a single and/or joint employer in that they share a common business purpose and ownership, maintained common control, oversight and direction over the operations of the Location, and maintained common control, oversight and direction over the work performed by the Plaintiff, including payroll practices.

43.     Upon information and belief, at all material times herein, Defendant PLK ran a fast-food restaurant business which depended (and continues to depend) on its franchisees, including Defendant Popeye's, selling fast-food products under a prescribed model.

44.     Upon information and belief, at all material times herein, Defendant PLK monitored and reviewed data concerning Defendant Popeye's' labor costs and exercised far more oversight and control over its franchisees than is customarily found in a franchisor-franchisee relationship, including contemporaneously monitoring all franchisees' sales and other transactions processed through franchisees' point of sales systems.

45.    Upon information and belief, Defendant PLK set Defendant Popeye's' company policies, procedures, programs and systems, and dictated the employment and compensation policies implemented by Defendant Popeye's.

46.    Upon information and belief, the impact of Defendant PLK's company-wide policies effectively stripped the store managers and supervisory personnel at the Location of discretionary authority in the performance of their duties.

47.    Upon information and belief, at all times material, Defendant PLK exercised sufficient control over the subject Location as to be considered a joint employer with Defendant Popeye's.

**Plaintiff's Overtime Allegations**

48.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

49.    Plaintiff commenced work for Defendant PLK in or around April 2015 at Defendant PLK's Jerome Avenue, Bronx, New York location. Thereafter, in or around May 2015, Plaintiff was transferred to the Location operated by Defendant Popeye's.

50.    Throughout her employment, Defendants required Plaintiff to work, and Plaintiff did work, at the Location on average six days per week, from at least 4:00 p.m. until at least 11:00 p.m. on weekdays, and at least 10:00 a.m. until at least 11:00 p.m. on Saturdays and/or Sundays.

51.    By approximation, throughout her employment, Defendants required Plaintiff to work, and Plaintiff did work, forty-eight hours per week, and oftentimes more.

52.    By way of example only, over the summer of 2015, Defendants required Plaintiff to work, and Plaintiff did work, the following schedule:

Monday: 4:00 p.m. until 11:00 p.m., with one half hour break;

Tuesday: 4:00 p.m. until 11:00 p.m., with one half hour break;

Wednesday: 4:00 p.m. until 11:00 p.m., with one half hour break;

Thursday: 4:00 p.m. until 11:00 p.m., with one half hour break;

Friday: 4:00 p.m. until 11:00 p.m., with one half hour break;

Saturday: 10:00 a.m. until 11:00 p.m., with one half hour break and the option to take a second half hour break; and

Sunday: 10:00 a.m. until 10:00 p.m., with one half hour break and the option to take a second half hour break.

Thus, for several weeks over the summer of 2015, Plaintiff worked approximately sixty (60) hours during the week.

53.    From April 1, 2015 until approximately December 1, 2015, Defendants paid Plaintiff a flat salary of $586.00 every other week, which was meant to cover only the first eighty hours of straight time the Plaintiff worked over the previous two weeks, and which computes to an hourly rate of $7.32 per hour.

54.    Defendants failed to pay Plaintiff the mandated minimum wage under New York State and New York City law from April 1, 2015 until approximately December 1, 2015.

55.    From approximately December 1, 2015 until her unlawful termination on or about November 3, 2016, Defendants paid Plaintiff a flat salary of $665.00 every other week, which was meant to cover only the first eighty hours of straight time the Plaintiff worked over the two weeks, and which computes to an hourly rate of $8.31 per hour.

56.     Defendants failed to pay Plaintiff the mandated minimum wage under New York State and New York City law from December 1, 2015 until her unlawful termination on or about November 3, 2016.

57.     With respect to her hours worked per week over forty, the Defendants paid Plaintiff at random amounts for this time, in cash, and not at time and one-half her straight-time rate for each hour worked over forty in a single workweek.

58.     On occasion and most frequently on weekends, Plaintiff worked a double shift and worked from 10:00 a.m. until 11:00 p.m. Accordingly, when Plaintiff worked a double shift she worked in excess of ten (10) hours.

59.     Defendants did not pay Plaintiff her proper "spread of hours" premium pay as required under the NYLL for the days when Plaintiff worked double shifts.

60.     Defendants paid Plaintiff, an hourly non-exempt employee, on a bi-weekly basis.

61.     On each occasion when they paid Plaintiff, Defendants intentionally failed to provide Plaintiff with a wage statement that accurately listed, *inter alia*, her actual hours worked for that week, her straight and overtime rates of pay for all hours worked, her spread of hours pay, and/or her total pay for the week.

62.     Additionally, Defendants did not provide Plaintiff with a wage notice at the time of her hire, or at any time thereafter, containing any of the following information: her rate of pay and basis thereof; whether she was paid by the hour, shift, day, week, salary, piece, commission, or other; whether any allowances were claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by Defendants; the name and physical addresses of Defendants; any "doing business as" names used by Defendants; and Defendants' mailing addresses and telephone numbers.

63.     Defendants treated Plaintiff and all FLSA Plaintiffs and Rule 23 Plaintiffs in the manner described above so as to maximize their profits while minimizing their labor costs.

64.     Every hour that Plaintiff and FLSA Plaintiffs and Rule 23 Plaintiffs worked was for Defendants' benefit.

**Plaintiff's Individual Racial and Religious Discrimination Claims**

I.          Background

65.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

66.     Plaintiff, a Black Jamaican female, is of Christian faith.

67.     Notably, the Location is situated in a predominantly Jamaican community and, upon information and belief, a majority of the Location's patrons during Plaintiff's tenure were Black and/or Jamaican.

68.     At the Location, Plaintiff was supervised by Jay (last name unknown) ("Manager Jay"), Ahad Alori ("GM Ahad"), Javet (last name unknown and first name spelled phonetically), also known as 'Joe' ("Owner Javet"), and at times, Amad (last name unknown) ("Temporary Manager Amad").

69.     Upon information and belief, Manager Jay, GM Ahad, Owner Javet, and Temporary Manager Amad (herein collectively referred to as the "Muslim Managers") are all of Middle Eastern descent and of Muslim faith.

70.     Indeed, Plaintiff often witnessed her Muslim Managers, at various times during her tenure, perform the required Muslim prayer rituals throughout the day. Moreover, the Muslim Managers often spoke amongst one another in a foreign, upon information and belief

Middle Eastern, language to the exclusion of the non-Muslim and non-Middle Eastern personnel, including Plaintiff.

71.    Upon information and belief, the Muslim Managers held a deep-rooted animus against non-Muslim persons, including Plaintiff. Upon information and belief, the Muslim Managers were especially intolerant of Plaintiff as a Christian *and* Black Jamaican female.

72.    The Muslim Managers openly preferred to work with other Muslim individuals. As a result, Plaintiff, as a Christian, Black Jamaican female, was repeatedly targeted and harassed in an effort to force her to quit her employment.

73.    Upon information and belief, Defendant Popeye's instituted and maintained a policy and practice of compensating and promoting Muslim employees at a higher and faster rate than non-Muslim employees at the Location.  Upon information and belief, Defendant PLK approved of any and all hiring and compensation decisions made by the Muslim Managers, and was aware of the blatantly slanted compensation practices being implemented at the Location.

74.    By way of example, before joining the management team at the Location, upon information and belief, Temporary Manager Amad was a cashier at one of Defendant PLK's Brooklyn, New York locations. Despite this, Temporary Manager Amad openly bragged to Ms. Maddix that he made "three times more" than she did an hour when he was a cashier.

75.    As a further example, Defendants hired Samim (last name unknown) ("Cashier Samim") as a cashier at the Location.  Upon information and belief, Cashier Samim was, like the Muslim Managers, of Middle Eastern descent and of Muslim faith.

76.    Defendants' Muslim Managers immediately began conversing with Cashier Samim in the same foreign language used to conceal their conversations from non-Muslim employees such as Ms. Maddix.

77.     Further, despite having no prior experience in management, within one month of his employment at the Location, the Muslim Managers began training Cashier Samim to become another manager at the Location.

78.     When Ms. Maddix inquired as to why the newest employee with far less seniority than she was being trained to take on a management position, and expressed her interest in similarly training for such management role, Plaintiff's requests were summarily rebuffed.

79.     Plaintiff was told, in no uncertain terms, that Defendants wanted to promote Cashier Samim over her and that she would never become a manager at the Location if the Muslim Managers had any say in the matter.

80.     The Muslim Managers frequently ostracized the non-Muslim and non-Middle Eastern employees, including Plaintiff, by speaking to each other in a foreign, upon information and belief, Middle Eastern language.

81.     Upon information and belief, the Muslim Managers often spoke about the non-Muslim and non-Middle Eastern staff in this language in an effort to conceal their conversations. Plaintiff even experienced her name being mentioned and discussed amongst the Muslim Managers during their private conversations in this other language.

82.     The Muslim Managers would never disclose what they discussed while speaking in this foreign language, ever though Plaintiff asked them to do so after hearing them use her name in conversations.

83.     Moreover, Defendant Popeye's disproportionately disciplined and belittled the non-Muslim and non-Middle Eastern employees at the Location, including and especially Ms. Maddix, who was touted as the Location's 'trouble maker' because, as the Muslim Managers stated, she "talked too much" when she experienced unfair treatment.

84.     For example, as one of Defendant Popeye's' more competent employees, Ms. Maddix was sometimes charged with training new personnel. Often times, the new personnel were, upon information and belief, of Muslim faith and Middle Eastern descent.

85.     The new Muslim and Middle Eastern employees often refused to listen to Plaintiff and gave Ms. Maddix an extremely difficult time. When Ms. Maddix reported this insubordination to the Muslim Managers, they blamed Ms. Maddix and disciplined her for insufficiently training the personnel. The Muslim and Middle Eastern workers were never reprimanded for their unprofessional and insubordinate behavior.

86.     The Muslim Managers often humiliated Plaintiff by screaming at her for frivolous and sometimes non-existent infractions in front of her colleagues and the Location's customers.

87.     Plaintiff complained about this treatment but to no avail. She was forced to remain in a work environment where she was treated as a second-class citizen and marked as a trouble maker solely because of her race and religious beliefs.

88.     On or about November 3, 2016, Defendants terminated Ms. Maddix's employment at the Location for allegedly fighting with a fellow co-worker. In fact, it was the co-worker who assaulted and attacked Plaintiff by pulling Ms. Maddix's hair while in the workplace, and Plaintiff tried only to defend herself. In fact, that same co-worker continued to threaten Plaintiff even after the altercation.

89.     Nevertheless, Defendants used this opportunity to terminate Plaintiff's employment and, upon information and belief, replaced Ms. Maddix with a Muslim individual. Notably, Plaintiff's attacker was never reprimanded or spoken to about her heinous and in fact, criminal behavior.

90.     Indeed, upon information and belief, the majority of the staff who formerly worked with Plaintiff at the Location have been replaced with Muslim employees.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
*(Religious Discrimination – Hostile Work Environment in violation of the New York State Human Rights Law on Behalf of Plaintiff Individually)*

91.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

92.     Plaintiff, a Black Jamaican, Christian female, was and is a member of a protected class under the SHRL.

93.     Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

94.     As set forth in detail above and herein, Defendants subjected Plaintiff to a hostile work environment on the basis of her religion/faith - Christianity.

95.     The discrimination Plaintiff suffered while employed with Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person, and culminated in Plaintiff's unjustified and unlawful termination.

96.     The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment.

97.     By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

98.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress.

99.    Accordingly, Plaintiff was discriminated against on the basis of her religion/faith by virtue of having been subjected to a hostile work environment by Defendants, and having been unlawfully and unjustifiably terminated in violation of the New York State Human Rights Law.

## AS AND FOR A SECOND CAUSE OF ACTION
*(Religious Discrimination – Disparate Treatment in violation of the New York State Human Rights Law on Behalf of Plaintiff Individually)*

100.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

101.    Plaintiff, a Black Jamaican, Christian female, was and is a member of a protected class under the SHRL.

102.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

103.    As set forth in detail above and herein, Defendants subjected Plaintiff to disparate treatment and disparate punishment and/or discipline on the basis of her religion/faith – Christianity – as compared to her similarly situated Muslim colleagues.

104.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment, and culminated in Plaintiff's unjustified and unlawful termination.

105.    By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

106.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress.

107.    Accordingly, Plaintiff was discriminated against on the basis of her religion/faith by virtue of having been subjected to disparate punishment/discipline and disparate treatment by Defendants as compared to her similarly situated Muslim so-workers, and having been unlawfully and unjustifiably terminated in violation of the New York State Human Rights Law.


## AS AND FOR A THIRD CAUSE OF ACTION
*(Religious Discrimination – Hostile Work Environment in violation of the New York City Human Rights Law on Behalf of Plaintiff Individually)*

108.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

109.    Plaintiff, a Black Jamaican, Christian female, was and is a member of a protected class under the CHRL.

110.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

111.    As set forth in detail above and herein, Defendants subjected Plaintiff to a hostile work environment on the basis of her religion/faith - Christianity.

112.    The discrimination Plaintiff suffered while employed with Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person and culminated in Plaintiff's unjustified and unlawful termination.

113.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment.

114.    By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

115.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress.

116.    Accordingly, Plaintiff was discriminated against on the basis of her religion/faith by virtue of having been subjected to a hostile work environment by Defendants, and having been unlawfully and unjustifiably terminated in violation of the New York City Human Rights Law.

## AS AND FOR A FOURTH CAUSE OF ACTION
*(Religious Discrimination – Disparate Treatment in violation of the New York City Human Rights Law on Behalf of Plaintiff Individually)*

117.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

118.    Plaintiff, a Black Jamaican, Christian female, was and is a member of a protected class under the CHRL.

119.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

120.    As set forth in detail above and herein, Defendants subjected Plaintiff to disparate treatment and disparate punishment and/or discipline on the basis of her religion/faith – Christianity – as compared to her similarly situated Muslim colleagues.

121.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment, and culminated in Plaintiff's unjustified and unlawful termination.

122.    By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

123.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress.

124.    Accordingly, Plaintiff was discriminated against on the basis of her religion/faith by virtue of having been subjected to disparate punishment/discipline and disparate treatment by Defendants as compared to her similarly situated Muslim so-workers, and having been unlawfully and unjustifiably terminated in violation of the New York City Human Rights Law.


### AS AND FOR A FIFTH CAUSE OF ACTION
*(Race Discrimination – Disparate Treatment in Violation of the New York State Human Rights Law)*

125.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

126.    Plaintiff, a Black Jamaican, Christian female, was and is a member of a protected class under the SHRL.

127.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

128.    As set forth in detail above and herein, Defendants subjected Plaintiff to disparate treatment and disparate punishment and/or discipline on the basis of her race – Black – as compared to her similarly situated non-Black colleagues.

129.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment, and culminated in Plaintiff's unjustified and unlawful termination.

130.    By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

131.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress.

132.    Accordingly, Plaintiff was discriminated against on the basis of her race by virtue of having been subjected to disparate punishment/discipline and disparate treatment by Defendants, and having been unlawfully and unjustifiably terminated in violation of the New York State Human Rights Law.


## AS AND FOR A SIXTH CAUSE OF ACTION
*(Race Discrimination – Hostile Work Environment in Violation of the New York State Human Rights Law)*

133.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

134.    Plaintiff, a Black Jamaican, Christian female, was and is a member of a protected class under the SHRL.

135.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

136.    As set forth in detail above and herein, Defendants subjected Plaintiff to a hostile work environment on the basis of her race – Black.

137.    The discrimination Plaintiff suffered while employed with Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person and culminated in Plaintiff's unjustified and unlawful termination.

138.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment.

139.    By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

140.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress.

141.    Accordingly, Plaintiff was discriminated against on the basis of her race by virtue of having been subjected to a hostile work environment by Defendants, and having been unlawfully and unjustifiably terminated in violation of the New York State Human Rights Law.

## AS AND FOR AN SEVENTH CAUSE OF ACTION
*(Race Discrimination – Disparate Treatment in Violation of the New York City Human Rights Law)*

142.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

143.    Plaintiff, a Black Jamaican, Christian female, was and is a member of a protected class under the CHRL.

144.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

145.    As set forth in detail above and herein, Defendants subjected Plaintiff to disparate treatment and disparate punishment and/or discipline on the basis of her race – Black – as compared to her similarly situated non-Black colleagues.

146.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment, and culminated in Plaintiff's unjustified and unlawful termination.

147.    By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

148.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress.

149.    Accordingly, Plaintiff was discriminated against on the basis of her race by virtue of having been subjected to disparate punishment/discipline and disparate treatment by Defendants, and having been unlawfully and unjustifiably terminated in violation of the New York City Human Rights Law.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
*(Race Discrimination – Hostile Work Environment in Violation of the New York City Human Rights Law)*

150.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

151.    Plaintiff, a Black Jamaican, Christian female, was and is a member of a protected class under the CHRL.

152.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

153.    As set forth in detail above and herein, Defendants subjected Plaintiff to a hostile work environment on the basis of her race – Black.

154.    The discrimination Plaintiff suffered while employed with Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person and culminated in Plaintiff's unjustified and unlawful termination.

155.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment.

156.    By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

157.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress.

158.    Accordingly, Plaintiff was discriminated against on the basis of her race by virtue of having been subjected to a hostile work environment by Defendants, and having been unlawfully and unjustifiably terminated in violation of the New York City Human Rights Law.

## AS AND FOR A NINTH CAUSE OF ACTION
*(Race Discrimination – Hostile Work Environment in Violation of 42 U.S.C. § 1981)*

159.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

160.    Plaintiff, a Black Jamaican, Christian female, was and is a member of a protected class.

161.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

162.    As set forth in detail above and herein, Defendants subjected Plaintiff to a hostile work environment on the basis of her race – Black.

163.    The discrimination Plaintiff suffered while employed with Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person and culminated in Plaintiff's unjustified and unlawful termination.

164.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment.

165.    By reason of Defendants' repeated violations of Plaintiff's rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

166.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress.

167.    Accordingly, Plaintiff was discriminated against on the basis of her race by virtue of having been subjected to a hostile work environment by Defendants, and having been unlawfully and unjustifiably terminated in violation of 42 U.S.C. § 1981.

## AS AND FOR A TENTH CAUSE OF ACTION
*(Race Discrimination – Disparate Treatment in Violation of 42 U.S.C. § 1981)*

168.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

169.    Plaintiff, a Black Jamaican, Christian female, was and is a member of a protected class.

170.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

171.    As set forth in detail above and herein, Defendants subjected Plaintiff to disparate treatment and disparate punishment and/or discipline on the basis of her race – Black – as compared to her similarly situated non-Black colleagues.

172.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment, and culminated in Plaintiff's unjustified and unlawful termination.

173.    By reason of Defendants' repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

174.    As a direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress.

175.    Accordingly, Plaintiff was discriminated against on the basis of her race by virtue of having been subjected to disparate punishment/discipline and disparate treatment by Defendants, and having been unlawfully and unjustifiably terminated in violation of 42 U.S.C. § 1981.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
*(Unpaid Overtime under the FLSA on Behalf of Plaintiff and FLSA Plaintiffs)*

176.    Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

177.    As described in detail above, at all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 206(a) and 207(a). Further, Plaintiff and FLSA Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. § 207(a).

178.    At all relevant times, Defendant PLK had an annual gross revenue in excess of $500,000.

179.    At all relevant times, Defendant Popeye's had an annual gross revenue in excess of $500,000.

180.    29 U.S.C. § 206(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

181.    As described above, Defendants are employers within the meaning of the FLSA while Plaintiff and FLSA Plaintiffs are employees within the meaning of the FLSA.

182.    Plaintiff and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendants failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

183.    Defendants willfully violated the FLSA.

184.    Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

185.    Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violation of the FLSA's overtime provisions.

## AS AND FOR A TWELFTH CAUSE OF ACTION
*(Unpaid Overtime under the NYLL and the NYCCRR on Behalf of Plaintiff and Rule 23 Plaintiffs)*

186.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

187.    Defendants employed Plaintiff within the meaning of the NYLL §§ 2 and 651.

188.    NYLL § 160 and 12 NYCCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for any hours worked exceeding forty in a workweek.

189.    As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff and Rule 23 Plaintiffs are employees within the meaning of the NYLL and the NYCCRR.

190.    As also described above, Plaintiff and Rule 23 Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCCRR's overtime provisions.

191.    Plaintiff and Rule 23 Plaintiffs are entitled to their overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

192.    Plaintiff and Rule 23 Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and NYCCRR's overtime provisions.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
*(Failure to Pay Minimum Wage and Failure to Pay Spread of Hours premiums in Violation of the NYLL)*

193.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

194.    Defendants employed Plaintiff within the meaning of the NYLL §§ 2 and 651.

195.    Defendants knowingly and willfully violated Plaintiffs and the Rule 23 Plaintiffs' rights by failing to pay Plaintiff and the Rule 23 Plaintiffs minimum wages in the lawful amount for hours worked.

196.    Pursuant to New York State Department of Labor Regulation § 142-2.4, employers are required to pay a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours.

197.    Defendants knowingly and willfully violated Plaintiffs and the Rule 23 Plaintiffs' rights by failing to pay a "spread of hours" premium to Plaintiff for each day in which her shift exceeded ten (10) hours pursuant to New York State department of Labor Regulation § 142-2.4.

198.    Due to the Defendants' NYLL violations, Plaintiff and the Rule 23 Plaintiffs are entitled to recover from Defendants their unpaid minimum wages and unpaid "spread of hours" premiums, reasonable attorney's fees, interest, and costs and disbursements of this action pursuant to N.Y. Lab. Law §§ 663(1) *et. seq.* and § 198.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
*(Failure to Furnish Proper Wage Statements in Violation of the NYLL on Behalf of Plaintiff and Rule 23 Plaintiffs)*

199.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

200.    N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

201.    As described above, the Defendants, on each payday, failed to furnish Plaintiff and Rule 23 Plaintiffs with accurate wage statements containing the criteria required under the NYLL.

202.    Prior to February 27, 2015, pursuant to N.Y. Lab. Law § 198(1-d), the Defendants are liable to Plaintiff and Rule 23 Plaintiffs in the amount of $100 for each workweek after the violation occurred, up to a statutory cap of $2,500.

203.    On or after February 27, 2015, pursuant to N.Y. Lab. Law § 198(1-d), Defendants are liable to Plaintiff and Rule 23 Plaintiffs in the amount of $250 for each workday after the violation occurred, up to a statutory cap of $5,000.

## AS AND FOR AN FIFTEENTH CAUSE OF ACTION
*(Failure to Furnish Proper Wage Notices in Violation of the NYLL on Behalf of Plaintiff and Rule 23 Plaintiffs)*

204.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

205.    N.Y. Lab. Law § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

206.    Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff and Rule 23 Plaintiffs are employees within the meaning of the NYLL and the NYCCRR.

207.    As described above, the Defendants failed to furnish Plaintiff and Rule 23 Plaintiffs with accurate wage notices at hire, or at any time thereafter, containing all of the criteria required under the NYLL.

208.    Prior to February 27, 2015, pursuant to N.Y. Lab. Law § 198(1-b), Defendants are liable to Plaintiff and Rule 23 Plaintiffs in the amount of $50 for each workweek after the violations initially occurred, up to a statutory cap of $2,500.

209.    On or after February 27, 2015, pursuant to N.Y. Lab. Law § 198(1-b), Defendants are liable to Plaintiff and Rule 23 Plaintiffs in the amount of $50 for each workday after the violations initially occurred, up to a statutory cap of $5,000.

## DEMAND FOR A JURY TRIAL

210.    Pursuant to FRCP 38(b), Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, FLSA Plaintiffs and Rule 23 Plaintiffs demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.      An order restraining Defendants from any retaliation against Plaintiff, FLSA Plaintiffs, and/or Rule 23 Plaintiffs for participation in any form in this litigation;

d.      Designation of this action as a FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.      Certification of the claims brought in this case under the NYLL and NYCCRR as a class action pursuant to FRCP 23;

f.      All damages that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs would have received but for the Defendants' unlawful payment practices;

g.      All compensatory damages that Plaintiff has sustained as a result of the Defendants' unlawful discriminatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that she would have received but for the Defendants' conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

h.      Punitive damages, as provided by law, in connection with Plaintiff's discrimination claims;

i.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

j.      Awarding Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and an award of a service payment to Plaintiff;

k.      Designation of Plaintiff and her counsel as class/collective action representatives under the FRCP and the FLSA;

l.      Pre-judgment and post-judgment interest, as provided by law; and

m.      Granting Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs any other and further relief as this Court finds necessary and proper.

Dated:  New York, New York
        June 20, 2017

NESENOFF & MILTENBERG, LLP
*Attorneys for Plaintiff*

By:  *Megan Goddard*

Andrew T. Miltenberg, Esq.
Megan S. Goddard, Esq.
Gabrielle M. Vinci. Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
212.736.4500

## VERIFICATION

**STATE OF NEW YORK**                )
                                     ) ss.:
**COUNTY OF NEW YORK**               )


    **TAMOY MADDIX,** being duly sworn, deposes and says:

    I am the Plaintiff named in this matter. I have read the annexed Complaint, know the contents thereof, and the same are true to my knowledge, except as to matters alleged upon information and belief and as to those matters, I believe them to be true.

                                            **TAMOY MADDIX**

**Sworn to and subscribed before me
this 20 day of June , 2017.**


**NOTARY PUBLIC**

GABRIELLE M. VINCI
Notary Public, State of New York
Registration #02VI6333133
Qualified In Nassau County
Commission Expires Nov. 16, 2019